**RESOLUTION TRUST CORPORATION,
Petitioner,**

v.

**Jon BURKE, Robert B. Gillam, and
Eugene Reed, Respondents.**

**Misc. No. 94–289 (CRR).**

United States District Court,
District of Columbia.

Nov. 22, 1994.

Suzanne Rigby, of Resolution Trust Corp., and Nancy R. Grunberg, of Fields & Director, Washington, DC, for petitioner.

Marcus S. Topel and Donald M. Horgan, of Topel & Goodman, San Francisco, CA, for respondent Robert B. Gillam.

Peter S. Modlin and Robert J. Breakstone, of Landels, Ripley & Diamond, San Francisco, CA, for respondents Jon Burke and Eugene Reed.

Cary M. Feldman, of Scwalb, Donnenfeld, Bray & Silbert, Washington, DC, local counsel, for respondents.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

On September 2, 1994, the Petitioner, Resolution Trust Corporation ("RTC") filed a Petition for Summary Enforcement of Administrative Subpoenas *Duces Tecum* served upon Respondents Jon Burke, Robert B. Gillam, and Eugene Reed in the RTC's investigation regarding Home Savings Bank, Anchorage, Alaska ("Home Savings"). The parties filed respective oppositions and replies thereto, and the Court held a hearing on October 7, 1994. At the hearing, the Court instructed the RTC to file a modified subpoena in light of the Court's discussions with counsel, and counsel's discussion with each other during a Court recess, regarding the applicable law and the facts of this case. The RTC filed a modified subpoena on October 18, 1994, the Respondents again filed an opposition, and the RTC again filed a reply.

In view of the train of papers unexpectedly filed following the hearing on October 7, 1994, the Court held a status conference on November 15, 1994, at which time the parties stipulated that the only contested items of the modified subpoenas were those numbered one and two, and that the record would be closed as of that date. The Court took the matter under advisement.

Accordingly, now before the Court for review are the following modified subpoena requests only:

1) A current financial statement that reflects [the Respondents'] current income, assets (whether wholly owned, jointly held, held by another person for [the Respondents'] use or benefit or otherwise), and liabilities.

2) Federal and State tax returns for the last three years.

In their Joint Response to the Resolution Trust Corporation's Proposed Order Enforcing Modified Subpoena *Duces Tecum*, filed October 20, 1994, and at the status conference on November 15, 1994, the Respondents have argued through counsel that the Court should deny enforcement of the above-mentioned modified subpoena requests because they seek material relating solely to the Respondents' financial condition during the stated time period. As such, the Respondents contend, they are designed solely for the purpose of determining the Respondents' wealth and cannot be enforced because the RTC has failed to demonstrate specific and articulable facts giving rise to a suspicion that the Respondents were involved in wrongdoing. The RTC responds that because this material is reasonably relevant to the issue of liability and to the issue of whether the RTC should avoid transfers of any of the Respondents' assets or attach any assets, the contested modified subpoena requests should be enforced, without the need for any showing of an articulable suspicion of liability.

Upon careful consideration of the extensive pleadings filed in this case, the oral arguments of counsel, and the applicable law, the

Court finds that the considerable deference due the RTC under *RTC v. Walde*, 18 F.3d 943 (D.C.Cir.1994), and like cases, compels the Court to enforce requests numbered one and two of the RTC's modified subpoena filed in this matter.[1]

### BACKGROUND

The RTC is investigating possible claims against various persons and entities relating to Home Savings, a failed savings association for which RTC was appointed receiver. Respondent Burke was a director of Home Savings from before 1983 to June 29, 1988. Respondent Gillam was a director from before 1983 to June 29, 1988, and was also Chairman of the Board and Chief Executive Officer of the association from October 1, 1985 to June 29, 1988. Respondent Reed was a director of Home Savings from before 1983 to June 29, 1988. The RTC is conducting the investigation to determine, *inter alia*, whether to pursue possible claims against Respondents Burke, Gillam, and Reed based on negligence, gross negligence, breach of fiduciary duty, or other misconduct relating to Home Savings, and whether to take other actions within the RTC's statutory powers.

The RTC therefore issued subpoenas to the Respondents pursuant to its authority under 12 U.S.C. §§ 1821(d)(2)(I) and 1818(n) and pursuant to an order of investigation that states, in pertinent part, that the RTC is investigating to determine whether:

(1) former officers, directors, attorneys, accountants, and others who provided services to, or otherwise dealt with, Home Savings, its successors or affiliates may be liable as a result of any actions, or failures to act, in connection with or which may have affected Home Savings its successors or affiliates; (2) the RTC should seek to avoid a transfer of any interests or an incurrence of any obligations; (3) the RTC should seek an attachment of assets; and (4) pursuit of such litigation would be cost-effective, considering the extent of the potential defendant's ability to pay a judgment in any such litigation.

By letters dated November 1, 1993 to the RTC, the Respondents objected to the subpoenas on various grounds, including lack of authority, privacy, Fourth Amendment, and due process. The Petitioners re-issued the subpoenas, and the Respondents similarly responded. The RTC submits that other subpoena recipients have complied with the original subpoenas served upon the Respondents.

The Respondents filed an administrative appeal of the subpoenas in April 1994. In July 1994, the RTC rejected these appeals, asserting power to subpoena personal financial information by virtue of the fact that the Respondents were former directors of a failed savings and loan.

### DISCUSSION

■ The enforcement of the RTC's administrative subpoenas on former officers or directors of failed financial institutions was most recently addressed in *RTC v. Walde*, 18 F.3d 943 (D.C.Cir.1994). In *Walde*, the RTC sought enforcement of an administrative subpoena on the same grounds at issue in the instant case. Judge Jackson granted enforcement, and the Court of Appeals remanded the case with instructions, holding in pertinent part that the RTC had authority to subpoena material "reasonably relevant" to the administrative investigation. *Id.* at 946. "[T]he test is satisfied if the documents sought are 'not plainly irrelevant' to the investigative purpose." *FTC v. Carter*, 636 F.2d 781, 788 (D.C.Cir.1980) (quoting *SEC v. Arthur Young & Company*, 584 F.2d 1018, 1029 (D.C.Cir.1978), *cert. denied*, 439 U.S. 1071, 99 S.Ct. 841, 59 L.Ed.2d 37 (1979)). *See also FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C.Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993), and cases cited therein.

The Court of Appeals stated that a court must "defer to the agency's appraisal of relevancy, which 'must be accepted so long as it is not obviously wrong.'" *Id.* at 946 (quoting *Invention Submission Corp.*, 965 F.2d at 1089). Thus "'[i]f the district court finds

---

1. As mentioned above, at the status conference held on November 15, 1994, counsel for the Respondents represented that they had no objec-

tion to modified subpoena requests numbered three through seven. *See* Order dated November 15, 1994.

that the information sought by the agency is relevant, [the Court of Appeals] will affirm unless that determination is clearly erroneous.'" *Walde*, 18 F.3d at 946–47. In addition, the Court observed that in an administrative context, "'[t]he requested material ... need only be relevant to the investigation—the boundary of which may be defined quite generally....'" *Id.* at 947 (quoting *Invention Submission Corp.*, 965 F.2d at 1090). The Court further advised that "an agency's investigatory authority is far-reaching, analogous to that of a grand jury...." *Id.* Thus "'it is essentially the respondent's burden to show that the information is irrelevant.'" *Id.* at 948 (quoting *Invention Submission Corp.*, 965 F.2d at 1090).

The *Walde* Court remanded the case to the district court with instructions to review the information sought by the RTC and to withhold enforcement as to any information that is not relevant to the lawful purposes of its orders of investigation. This Court faces the same inquiry with respect to the instant modified subpoenas.

In discussing relevancy, the Court of Appeals established a separate standard for subpoenas seeking personal financial information *solely* for determining the cost-effectiveness of pursuing claims against the subpoena recipients. In particular, the Court held that the RTC must have at least an "articulable suspicion" that a former officer or director is liable to a failed financial institution before a subpoena for his or her personal financial information may issue for the purpose of assessing the net worth of an officer or director. *Id.* at 949.

Thus, in sum, this Court must first determine whether the information sought is rea-

sonably relevant to the issues of liability and to the avoidance of asset transfers and/or attachable assets. If, and only if, the Court finds that the modified subpoena requests are not reasonably relevant to one of these issues, the Court must then turn to the question of whether the RTC has an articulable suspicion of liability that justifies its use of an administrative subpoena to acquire personal financial information for the sole purpose of assessing the cost-effectiveness of a potential lawsuit against the Respondents.

Upon careful consideration of the arguments set forth by counsel, the Court finds that the information sought in modified subpoena requests one and two is reasonably relevant to the issues of liability and the avoidance of asset transfers and/or attachment of assets. As such, the modified subpoena requests pass muster under *Walde*. Thus the Court need not determine whether the RTC has shown an "articulable suspicion" of liability to justify its further assertion that the RTC may subpoena the contested information in order to determine the cost-effectiveness of litigation.[2]

█ The Court reaches its conclusion based on *Walde's* articulation of the extremely deferential standard by which a court must review relevancy of the material sought in an administrative subpoena by the RTC. Although the Court is sympathetic to the Respondents' position, this Court is bound to follow the law set forth by the Court of Appeals in this Circuit. *See Critical Mass Energy Project v. Nuclear Regulatory Commission*, 975 F.2d 871, 876 (D.C.Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1579, 123 L.Ed.2d 147 (1993). Accordingly, the Court finds that under *Walde* it must enforce

2. The Court observes that, based on the Declaration of Anthony M. Lombardo, Senior Attorney in the Legal Division of the RTC, Professional Liability Section, the RTC would likely meet the "articulable suspicion" standard had the Court reached that inquiry. Mr. Lombardo states that, based on the RTC's analysis of Home Savings' Board of Director minutes, regulatory examinations, loan files, and other records, the RTC suspects that the Respondents approved speculative and imprudent real estate loans, including loans and other transactions that benefitted directors personally, and violated regulations in the approval of various loans; that the Respon-

dents failed to supervise the overall management of the institution, allowed the concentration of credit in real estate and other speculative activities, approved various insider transactions and extended credit to Chairman Gillam's friends on a preferential basis; that they maintained an inadequate loan loss reserve, and failed to maintain adequate control over Home Savings' excessive operating expenses; and that the Respondents generally failed to perform their fiduciary duties. Declaration of Anthony M. Lombardo, Petition for Summary Enforcement, Exh. A, at ¶¶ 7–8.

the modified subpoena requests at issue in the instant case.

In *Walde*, the Respondents raised the same argument submitted here, namely, that the subpoenas should not be enforced to the extent that they sought personal financial information. *Walde*, 18 F.3d at 943. The *Walde* Court first found that the investigative purposes set forth in that case (the same purposes asserted by the RTC in this case) of determining liability, avoidable asset transfers, attachable assets, and cost-effectiveness of litigation, are authorized by the governing statute, the Financial Institutions Reform Recovery, and Enforcement Act of 1989, 12 U.S.C. §§ 1441a, 1811 *et seq. Walde*, 18 F.3d at 946–48. The Court then asked whether the requested material was reasonably relevant to each of these purposes.

With respect to the issue of liability, the Court found that some of the personal financial information sought, such as bank statements, were reasonably relevant to the potential liability of its officers or directors. *Id.* at 946. The Court of Appeals only expressed concern with subpoenas for information on alimony payments or irrevocable trusts that predated the appellants' association with a failed S & L and to which no assets may be transferred. *Id.* at 947. Even with respect to this information, which is not at issue in the instant case, the Court noted that it might be reasonably relevant to the remaining purposes listed in the orders of investigation. *Id.* Regarding the identification of any avoidable asset transfers and attachable assets, the Court of Appeals found that the investigating agency is afforded "broad deference." *Id.* at 948.

In the instant case, the Court finds that a current statement of assets and liabilities, as well as the last three years of tax returns, are reasonably relevant to the issue of the Respondents' liability and to the RTC's need to investigate whether it should avoid any asset transfers during the last five years, or whether it should seek a judicial attachment of current assets.[3] In other words, the Court finds that the Respondents have failed to show that such information is *not* reasonably relevant to these purposes, in view of the considerable deference afforded the RTC in making this determination.[4]

Although the financial information requested post-dates the Respondents' tenure at Home Savings, the Court finds that it could reflect business associations, investments, or other financial arrangements between borrowers or others who had dealings with Home Savings and the Respondents during or after the Respondents' terms of employment at Home Savings.

Moreover, as the RTC can avoid asset transfers made within five years after the institution was placed into receivership, 12 U.S.C. § 1821(d)(17), and as the RTC can seek a judicial attachment or freeze of assets,

---

3. The type of information that the RTC seeks from the Respondents in the instant case was identified in the *Walde* opinion, 18 F.3d at 945, and, in cases since *Walde*, has been found to be reasonably relevant to the same investigative purposes asserted here. *See, e.g., RTC v. Adams et al.*, Misc. No. 92–492 (D.D.C. October 21, 1994) (Harris, J.) (finding income, assets, net worth, complete tax returns, and bank statements reasonably relevant to the RTC's purpose of investigating potential liability, the need for avoidance of asset transfers and/or attachment of assets); *RTC v. Barton, et al.*, Misc. No. 94–284 (D.D.C. October 17, 1994) (Jackson, J.) (finding financial statements, statements of net worth and bank statements reasonably relevant to the RTC's purpose to investigate liability, to avoid transfers and/or to freeze assets); *RTC v. Frates*, Misc. No. 92–499, 1993 WL 729628 (D.D.C. August 8, 1994) (Harris, J.) (enforcing subpoena for information as to current income, assets, and net worth, including financial statements, and com-

plete tax returns, without any showing of "articulable suspicion").

4. The Respondents argue that modified request number two is "even more objectionable than the worst of" the RTC's original requests, as it seeks federal and state tax returns for the last three years only. Respondents' Joint Response to the Resolution Trust Company's Proposed Order, at p. 3. The original subpoenas sought tax returns from January 1988 to the present. The Court thus observes that the modified request represents a compromise on the RTC's part, and the Respondents can hardly argue that this limitation is more intrusive than the original, unquestionably broader, subpoena request. The Court finds that, although the tax returns sought cover only the last three years, they are not, as the Respondents must otherwise prove, *ir*relevant to liability, to the avoidance asset transfers and/or to the need to freeze assets.

12 U.S.C. § 1821(d)(18), the Court accepts the RTC's assertion that the information sought is relevant to the investigation of whether the Respondents may have transferred assets in an attempt to put them beyond the RTC's reach or whether the RTC should seek an attachment of assets. Financial statements and tax returns, as the Petitioner contends, may reveal substantial changes in the Respondents' assets, thus indicating a need for further investigation regarding asset transfers and a possible asset freeze. In addition, the RTC's information request may seek information concerning potential asset transfers "unrelated" to Home Savings. *Linde Thompson Langworthy Kohn & Van Dyke, P.C. v. RTC*, 5 F.3d 1508, 1517 (D.C.Cir.1993). Thus, "[a]t this stage of its investigation, the RTC need not tie the material it seeks to a particular theory of violation or to concrete facts suggesting fraud." *Id. See also Walde*, 18 F.3d at 947 (quoting *RTC v. Koch*, Misc. No. 93–003, 1993 WL 177736 (D.D.C. Feb. 17, 1993) (a sufficient "suspicion of . . . the need for attachment of assets" may be founded "simply on the basis of Respondents' status as former directors of the failed savings institution.")).

Notably, the Respondents cite no case law supporting their contention that the information sought is not reasonably relevant, notwithstanding the deference afforded the agency, to the Respondents' liability, to the attachment of assets or to the avoidance of asset transfers. The Court thus has no convincing basis upon which to find the RTC's assessment of the relevance of the requested documents "obviously wrong," as *Walde* requires.

Finally, as the government is entitled to a "presumption of administrative regularity and good faith," the Court must credit the RTC's steadfast assertion that this information is reasonably relevant to the lawful purposes of its investigation. *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1091 (D.C.Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993). The Court observes that counsel did meet and confer regarding the original subpoenas and that, according to the Respondents, "most of the modified subpoena requests reflect an acceptable narrowing of the original subpoenas." Respondents' Joint Response to the Resolution Trust Corporation's Proposed Order, at p. 1. At the status conference on November 17, 1994, counsel for all parties represented that, despite their efforts, no further agreement could be made regarding the two requests at issue. Given the efforts and compromises made by all parties involved, the Court cannot now reject the RTC's asserted purposes for requesting the contested information as being "a mere pretext for circumventing" the articulable suspicion standard, as the Respondents urge. Opposition of Jon Burke and Eugene Reed, at p. 2. Opposition of Robert B. Gillam, at p. 9. The Court is satisfied that the RTC does seek the contested information for the alleged purposes of determining the Respondents' liability, the avoidance of asset transfers and the attachment of assets, and that the RTC's assessment that the information sought is reasonably relevant to these purposes is not "obviously wrong."[5]

### CONCLUSION

The Court finds that, under *Walde*, it must defer to the RTC's determination that the

---

**5.** The Court further finds that *Walde* already addressed the claim, asserted by the Respondents here, that enforcement of the subpoenas for the purpose of determining net worth would violate the Respondents' Fourth Amendment rights. In *Walde*, the Court of Appeals made clear that the RTC does not hold the authority to subpoena information for the sole purpose of assessing net worth; the Court thus concluded that it "will not reach appellants' Fourth Amendment challenge." *Walde*, 18 F.3d at 949. Under *Walde*, the Respondents correctly contend that a subpoena seeking information solely to determine net worth cannot be upheld where the RTC has no

articulable suspicion of liability. In the instant case, however, the Court finds that the information sought in the modified subpoena requests is reasonably relevant to determining liability, avoidance of asset transfers and attachment of assets. The Court therefore rejects the Respondents' argument that the information is sought solely for assessing their net worth, and finds their Fourth Amendment claim inapposite as, under *Walde*, the Fourth Amendment is satisfied by adherence to the standards set forth for administrative subpoena enforcement by that Court.

material sought in the instant modified subpoena requests numbered one and two is reasonably relevant to the issues of liability, avoidance of asset transfers, and/or the need to freeze assets. Investigation for these particular purposes does not require the RTC to show an articulable suspicion of the Respondents' liability. *See Walde,* 18 F.3d at 947. This showing is required only where the RTC subpoenas personal financial information for the sole purpose of assessing the cost-effectiveness of the litigation against the Respondents. *See id.* at 948–49. The Court thus finds that the subpoenas are enforceable as to these document specifications without regard to any RTC showing of articulable suspicion of liability.

Accordingly, the Court shall enforce modified subpoena requests numbered one and two of the RTC's proposed Order filed October 18, 1994, which are the only items of the modified subpoena which remain contested following the status conference on November 17, 1994. The Court shall issue an Order of even date consistent with the foregoing Memorandum Opinion.

### ORDER

Before the Court is a Petition of Resolution Trust Corporation for Summary Enforcement of Administrative Subpoenas *Duces Tecum,* as modified by the Petitioner's proposed Order filed October 18, 1994 and the Court's Order of November 15, 1994 memorializing a status conference held on that date. Upon careful consideration of the relevant law and the entire record herein, and for the reasons articulated in the Court's Memorandum Opinion issued of even date herewith, the Court shall grant the Petition to enforce the subpoenas as modified.

Accordingly, it is, by the Court, this 21st day of November, 1994,

ORDERED that the RTC Petition for Summary Enforcement of the Administrative *Duces Tecum,* as modified by the Petitioner's proposed Order, filed on October 18, 1994, and the Court's Order of November 15, 1994, memorializing a status conference held on that date, shall be, and hereby is, GRANTED; and it is

FURTHER ORDERED that the Petitioner shall serve upon the Respondents the modified Subpoena *Duces Tecum* contained in numbered paragraphs 1–7 on pages 1–2 of the Petitioner's proposed Order, filed on October 18, 1994, in the above-captioned case; and it is

FURTHER ORDERED that, within thirty days of the date of service of the modified Subpoena *Duces Tecum* pursuant to the above-ordered paragraphs, Respondents Jon Burke, Robert B. Gillam, and Eugene Reed shall comply with said administrative subpoenas.